**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

LARRY L. JONES; JANET JONES,
            *Plaintiffs-Appellants,*

            v.

E*TRADE MORTGAGE CORPORATION;
E*TRADE BANK,
            *Defendants-Appellees.*

No. 03-55575

D.C. No.
CV-02-01123-MJL

OPINION

Appeal from the United States District Court
for the Southern District of California
M. James Lorenz, District Judge, Presiding

Argued and Submitted
December 10, 2004—Pasadena, California

Filed February 11, 2005

Before: Betty B. Fletcher, John T. Noonan, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Noonan

## COUNSEL

Daniel H. Harris, Chicago, Illinois, for the plaintiffs-appellants.

Douglas P. Lobel, McLean, Virginia, for the defendants-appellees.

## OPINION

NOONAN, Circuit Judge:

Larry L. Jones (Jones) and Janet Jones appeal the judgment of the district court dismissing their complaint with prejudice for failure to state a cause of action under the Truth In Lending Act (TILA), 15 U.S.C. §§ 1601— 1667f, against E*Trade Mortgage Company and E*Trade Bank (collectively E*Trade). Holding that the Joneses have stated a viable complaint, we reverse and remand.

### ALLEGATIONS

The Joneses allege, and for the purpose of this appeal we take as true, the following:

In September, 2001, Jones contacted E*Trade to arrange the refinancing of the mortgage on his home. On September

15, 2001, Lisa Arroyo, a loan consultant employed by E*Trade, sent him five documents to complete his loan application. Among the documents was one entitled "40-Day Lock-in Disclosure and Agreement" (Agreement). It identified the Joneses and their property and established a loan amount of $201,000 at an interest rate of 7.25 percent. The Agreement further provided for a "Rate Lock Fee" that would be refunded at the close of escrow.[1]

The Agreement also contained general terms providing that applicants were required to return all documents listed on an enclosed checklist within three calendar days or forfeit the "lock deposit." If an applicant provided all the required information but his or her loan was not approved by the lender "based on income qualifying or credit," the Agreement provided that the lock-in fee would be refunded. If, however, the loan "fail[ed] to close for any other reason," including the applicant's decision to cancel the application, the lock-in fee would not be refunded.[2]

On September 21, 2001, E*Trade approved the $201,000 loan at 7.25 percent interest, credited the Joneses with the $400 lock-in fee, and sent them a "Notice of Right to Cancel." This notice outlined the Joneses' right under TILA to cancel the loan within three business days of the date of the transaction (specified as September 23, 2001— the same day the notice was signed) or the date the Joneses received their TILA disclosures. If the transaction were cancelled, the notice informed the Joneses that E*Trade "must return to you any money or property you have given to us or to anyone else in connection with the transaction." The notice gave the Joneses

---

[1]The Joneses paid $400.00 for the locked-in rate, although the Agreement specifies the amount charged as $800.00. The Joneses' complaint indicates that the $800.00 charge was merely a typographical error.

[2]The complete text of the Agreement is included in Appendix A.

until midnight on September 26, 2001, to send notice of cancellation to E*Trade.[3]

On September 25, 2001, Jones discovered that advertised interest rates were below 7.25 percent. He called E*Trade, spoke to Adam Ouye, a mortgage sales manager, and asked that the loan be repriced. Ouye refused and observed that, if the Joneses rescinded, they would forfeit the $400 lock-in fee. Jones invoked Regulation Z under the Truth In Lending Act. Ouye told him that E*Trade was not governed by Regulation Z and that they would lose the $400.

The Joneses proceeded with the loan at 7.25 percent interest for 30 years. Closing took place on October 8, 2001. At that time the average interest on a 30-year home mortgage was 6.77 percent.

Jones complained to the Comptroller of the Currency. As a result, the Department of the Treasury's Office of Thrift Supervision contacted E*Trade, and on January 10, 2002, reported to Jones the following:

> Upon receipt of your correspondence, we asked E*Trade Bank to research the issue you have raised regarding the refund of the interest rate lock in deposit when a loan is rescinded. Mr. Gregory D. Benson, Director of Compliance and Security, responded on behalf of the institution and explained that the institution's policy is to refund the deposit only in cases where the loan applicant does not qualify.

---

[3]The complete text of the Notice of Right to Cancel is included in Appendix B.

## PROCEEDINGS

On March 6, 2002, the Joneses brought this suit in the Northern District of Illinois as a class action against E*Trade. The case was transferred to the Southern District of California. On August 15, 2002, the Joneses filed an amended complaint alleging that E*Trade had failed to provide the "clear and conspicuous" disclosure of rescission rights required by 15 U.S.C. § 1635(a) and 12 C.F.R. § 226.23(b) and also stating a claim under California Business and Professions Code section 17200. E*Trade moved to dismiss. On March 14, 2003, the district court granted the motion.

The district court ruled that the Lock-in Agreement addressed only refund of the $400 lock-in fee before closing, and so was not inconsistent with the rescission right set out in the Notice of Right to Cancel. The district court dismissed the TILA claim with prejudice and the California claim without prejudice.

The Joneses appeal.

## ANALYSIS

**[1]** The purpose of the Truth In Lending Act is to ensure that users of consumer credit are informed as to the terms on which credit is offered them. 15 U.S.C. § 1601. To that end, the law requires creditors to "clearly and conspicuously disclose" borrowers' rights to rescind a home mortgage loan, in accordance with regulations of the Federal Reserve Board. 15 U.S.C. § 1653(a).

**[2]** The statute is implemented by Regulation Z, which requires creditors to describe the effects of rescission, including the creditor's obligation to "return any money or property that has been given to anyone in connection with the transaction." 12 C.F.R. § 226.23(d)(2). The Staff Commentary on this regulation adds:

> *Refunds to consumer.* The consumer cannot be required to pay any amount in the form of money or property either to the creditor or to a third party as part of the credit transaction. Any amounts of this nature already paid by the consumer must be refunded. "Any amount" includes finance charges already accrued, as well as other charges, such as broker fees, application and commitment fees . . .

12 C.F.R. part 226 Supp. I para. 23(d)(2)-1. On the face of the documents before us, the Lock-in Disclosure and Agreement appears to be part of an application to E*Trade for credit. The $400 charge is attached to this application and to the acquisition by the borrower of the locked-in interest rate. It is difficult to see this agreement as a separate transaction to be distinguished from the loan itself. It is step one in the several steps in obtaining this particular loan from E*Trade. Accordingly, E*Trade cannot be allowed to subvert the rescission right, including the right to the return of all the property and money tendered it in "this transaction." The construction of the Lock-in Disclosure and Agreement, first advanced by Ouye, a sales manager for E*Trade, then adopted by E*Trade replying to the Office of Thrift Supervision, and finally accepted by the district court, separates the several steps into several transactions and so permits the lender to extract money from the borrower who exercises his statutory right of rescission. That is not permitted by the Truth In Lending Act.

E*Trade makes the argument that if the loan had never closed, the Joneses would not have had the right to rescind. The argument is irrelevant to this case. The loan did close. Jones did have a right to rescind. What that right included was not clear to him because of Ouye's representations and what now appears to have been the corporate policy of E*Trade.

**[3]** The vitality of the Joneses claim under the Truth In Lending Act gives vitality as well to their state claim. Accordingly, the judgment of the district court is REVERSED and

the case is REMANDED for proceedings consistent with this opinion.

## APPENDIX A

Lender has delivered to you a loan application checklist ("Checklist") concurrently with the delivery of this Lock-in Disclosure. YOU MUST RETURN ALL OF THE DOCU-MENTS LISTED ON THE CHECKLIST WITHIN THREE (3) CALENDAR DAYS OF THE LOCK-IN DATE STATED ABOVE. IF YOU FAIL TO SUBMIT THIS DOCUMENTA-TION WITHIN THE THREE (3) CALENDAR DAYS:

A.   YOUR RATE IS SUBJECT TO CHANGE TO THE HIGHER OF THE FOLLOWING:

    1.   CURRENT MARKET RATE

    2.   ORIGINAL LOCKED-IN RATE

B.   APPLICANT DOES NOT QUALIFY FOR REFUND OF LOCK DEPOSIT FOR ANY REASON.

Although the TrueLock™ program locks in the interest rate and Value Price on your requested loan, this does not guarantee that your loan will close. Your loan application has received preliminary approval based on certain information and assumptions made during the application process. However, prior to closing your loan, Lender must verify property value, property conditions, mortgage insurance (if applicable), clear title, and certain other information that may be requested to evaluate your ability and willingness to meet credit obligations and the value and condition of the property.

If you provide Lender with all documentation requested of you (within 3 calendar days) to complete the underwriting review of your loan application (including, but not limited to, the information on the Checklist) and, following such review, Lender does not approve your loan for closing, based on income qualifying or credit, the lock-in fee will be refunded to you. If your loan fails to close for any other reason (includ-

ing your decision to cancel the application, then the lock-in fee will not be refunded to you.

Please be aware that if your loan fails to close within the stated lock-in period, Lender is under no obligation to extend such period or to close the loan on the terms stated herein. Lender does not warrant the lock-in period against any delays in processing, regardless of the party who is causing such delay. Should the lock-in period expire before your loan is funded, you will need to lock in a new interest rate and Guaranteed Value Price based on then current market conditions or the Original locked-in rate, whichever is higher. Because of this, it is imperative that you provide Lender, within the time frame stated above, with all documentation that is requested to complete the review of your loan application.

## APPENDIX B

### NOTICE OF RIGHT TO CANCEL

You are entering into a transaction that will result in a mortgage, deed of trust, or security deed ("security interest") on your home. You have a legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS from whichever of the following events occurs last:

> 1.  The date of the transaction, which is Sept. 23, 2001; or
>
> 2.  The date you received your Truth-in-Lending disclosures; or
>
> 3.  The date you received this notice of your right to cancel.

If you cancel the transaction, the mortgage is also cancelled. Within 20 CALENDAR DAYS after we receive your notice, we must take the steps necessary to reflect the fact that the mortgage on your home has been cancelled, and we must return to you any money or property you have given to us or to anyone else in connection with this transaction.

You may keep any money or property we have given you until we have done the things mentioned above, but you must then offer to return the money or property. If it is impractical or unfair for your to return the property, you must offer its reasonable value. You may offer to return the property at your home or at the location of the property. Money must be returned to the address below. If we do not take possession of the money or property within 20 CALENDAR DAYS of your offer, you may keep it without further obligation.

HOW TO CANCEL:

If you decide to cancel this transaction, you may do so by notifying us in writing:

Name of
Creditor:        E*TRADE MORTGAGE CORPORATION
At:              7755 CENTER AVENUE #100
                 HUNTINGTON BEACH, CA 92647

You may use any written statement that is signed and dated by you, and that states your intention to cancel and/or you may use this notice by dating and signing below. Keep one copy of this notice because it contains important information about your rights.

If you cancel by mail or telegram, you must send the notice no later than MIDNIGHT of Sept. 26, 2001 (or MIDNIGHT of the THIRD BUSINESS DAY following the latest of the three events listed above.) If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

I WISH TO CANCEL,

_____     Date: _____
Signature

The undersigned each acknowledge receipt of two copies of this NOTICE OF RIGHT TO CANCEL and one copy of the Federal Truth-in-Lending Disclosure Statement, all given by Lender in compliance with the Truth in Lending Simplification and Reform Act.

Each Borrower in this transaction has the right to cancel. The exercise of this right by one Borrower shall be effective as to all Borrowers.